IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-00869-MSK-KMT

HAZHAR A. SAYED,

    Plaintiff,

v.

DARRYL R. PROFITT, Regional Coordinator, C.D.O.C. Faith and Citizens Programs,

    Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND FINDING ALL OTHER MOTIONS MOOT

**THIS MATTER** comes before the Court on Defendant Darryl R. Profitt's Motion for Summary Judgment **(#68)**, Plaintiff Hazhar A. Sayed's response **(#75)**, Mr. Profitt's reply **(#77)**, and Mr. Sayed's surreply **(#88)**.[1] Having considered the same,[2] the Court **FINDS** and

---

[1] Also pending before the Court are (1) Mr. Sayed's Motion for Summary Judgment **(#30)**, to which Mr. Profitt responded **(#36)**, and Mr. Sayed replied **(#48, 60)**; (2) Mr. Profitt's Motion to Dismiss **(#61)**, to which Mr. Sayed responded **(#74)**, and Mr. Profitt replied **(#78)**; (3) Mr. Sayed's Objection to the Magistrate Judge's denial for appointment of counsel and experts **(#64)**, to which Mr. Profitt responded **(#70)**, and Mr. Sayed replied **(#72)**; and (4) Mr. Sayed's Motion for Reconsideration of the Court's denial of his request for an interpreter for all court proceedings **(#76)**, to which Mr. Profitt responded **(#79)**, and Mr. Sayed replied **(#86)**.
    Mr. Profitt's Motion to Dismiss **(#61)** raises the same arguments as does his Motion for Summary Judgment. Because the Summary Judgment Motion is supported by evidence, the Court deems the Motion to Dismiss **(#61)** moot and **denies** same. The resolution of Mr. Profitt's Motion for Summary Judgment as discussed in this Order renders the other motions moot; therefore, they **(#30, 64, 76)** are **denied** as well.

[2] In construing Mr. Sayed's pleadings, the Court is mindful that he is proceeding *pro se* and, therefore, the Court construes his pleadings liberally and holds him to a "less stringent standard" than pleadings drafted by lawyers in accordance with *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Such liberal construction is intended merely to overlook technical formatting errors, poor writing style, and other defects in the party's use of legal terminology, citation, and

**CONCLUDES** as follows.

## I. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## II. Issue Presented

In this action, Mr. Sayed, a prisoner within the Colorado Department of Corrections, asserts a single claim pursuant to 42 U.S.C. § 1983 for violation of his First Amendment right to freedom of religion based on the prison's failure to provide him with an opportunity to perform full ablution prior to all Islamic Jum'ah services.

In seeking summary judgment, Mr. Profitt asserts Eleventh Amendment immunity as to the claims brought against him in his official capacity and qualified immunity as to the claims brought against him in his individual capacity. Additionally, he argues that Mr. Sayed is not entitled to injunctive relief because he has since been moved to a new facility where full ablution is permitted prior to all Jum'ah services.

## III. Material Facts

The Court has reviewed all of the parties' submissions.[3] For purposes of this Motion

---

theories. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court, however, cannot act as a *pro se* litigant's legal advocate, and a *pro se* plaintiff retains the burden to allege sufficient facts to state a viable claim. Furthermore, *pro se* status does not relieve a party of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court must apply the same standard to counsel licensed to practice law and to a *pro se* party. *See McNeil v. United States*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

[3] Mr. Sayed has submitted an affidavit in connection with his response to Mr. Profitt's Motion for Summary Judgment, but this affidavit contains significantly fewer factual allegations than is contained in his brief. Therefore, in accordance with the Court's duty to liberally construe Mr. Sayed's pleadings and because the facts omitted from the affidavit are not material to a determination of the issues before the Court (but provide relevant background information),

only, the Court construes all disputed facts most favorably to Mr. Sayed. Viewing the facts in such light, the material facts are as follows.

Mr. Sayed is a prisoner in the Colorado Department of Corrections ("CDOC"). Mr. Sayed is a practicing Muslim. The CDOC's administrative regulations provide that Muslim inmates "should be allowed to shower prior to Jumah service."[4] *See* Colorado Department of Corrections, A.R. 800-01; Form E.

Mr. Sayed routinely attends Jum'ah prayer services on Friday. Ablution, or cleansing, is required prior to prayer, including Jum'ah services. Full ablution (or the "bath") requires that an individual shower or otherwise completely bathe. Partial ablution requires an individual to wash his hands, mouth, nose, face (with both hands), head, ears, neck, and the feet up to the ankles.[5] When an individual does not have access to water in sufficient quantity, a substitute for ablution may be employed. Complete substitution ablution is a symbolic demonstration of the importance of ablution and involves striking both hands on the earth, sand, or stone and then wiping various parts of the face and body.

In 2007, Mr. Sayed was housed at the Limon Correctional Facility ("LCF"). At LCF, Jum'ah services were held at 1:00 p.m. on Fridays, and in accordance with his religious practice Mr. Sayed was required to engage in ablution before this time. Inmates at LCF were allowed to shower only during "pod-time." The only available pod-time prior to Jum'ah services on Friday

---

the Court assumes that if called upon, Mr. Sayed would attest to the facts alleged in the brief for which he has personal knowledge and incorporates such facts herein.

[4] Jum'ah is a Friday group prayer that is obligatory for Muslims. *See Crawford v. Clarke*, 578 F.3d 39, 41 (1st Cir. 2009).

[5] Ablution is nullified if the inmate urinates, defecates, sleeps deeply, or touches himself with intent to achieve a pleasurable reaction, vomits, or produces gas.

morning was from 8:30 a.m. until 10:30 a.m.  Mr. Sayed's job[6] required him to work from approximately 8:00 a.m. until 10:45 a.m., preventing him from showering during the morning pod-time.  He was, however, able to use the sink facilities in his cell when he returned to his cell at approximately 11:10 a.m.  The sink in Mr. Sayed's cell was approximately 10" in diameter and 4" deep.  There was no drain on the cell floor for any water that is splashed outside of the sink.  Mr. Sayed contends that these limited resources are insufficient to perform full or partial ablution.

On December 19, 2008, Mr. Sayed attempted to take a shower outside pod-time. Because his actions allegedly were contrary to an order, an incident report was filed, but the charges were later dropped.  Mr. Sayed filed grievances based on his inability to access the showers on Fridays prior to the Jum'ah services.  The Chaplain at LCF requested guidance from Mr. Profitt in his capacity as the Regional Coordinator for Faith and Citizens Programs at the CDOC, regarding Mr. Sayed's grievances.  Mr. Profitt responded that partial ablution or substituted ablution were viable alternatives for complete ablution and, therefore, no allowance for showering outside pod-time was necessary to allow Mr. Sayed to practice his religion.

At some unidentified point in time after Mr. Sayed initiated this action, he was transferred to the Fremont Correctional Facility ("FCF").  In Mr. Sayed's unit at FCF, inmates are free to leave their cells, including to shower, three times per day: 10:15 a.m. to 11:00 a.m.; 3:30 p.m. to 4:30 p.m.; and 5:15 p.m. to 9:30 p.m.  If an inmate has a job, he is free to shower at any time during the day, except during inmate count times.  While at FCF, Mr. Sayed has not complained or grieved his ability to shower prior to Jum'ah services.

---

[6] All inmates were required to have a job.

## IV. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

When the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material

fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

When the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

In this case, the parties have filed cross-motions for summary judgment, which present peculiar problems because parties often frame their arguments on the assumption that the cross motions will be considered together. The Tenth Circuit, however, has repeatedly directed that cross-motions for summary judgment be determined independently. *See Atl. Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d 1138, 1148 (10th Cir. 2000); *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."). This is because, as discussed *supra*, a determination of whether there is a genuine dispute as to a material fact turns upon which party has the burden of proof, the standard of proof, and whether the evidence submitted is adequate under the relevant standard of proof. *See In re Ribozyme Pharms., Inc., Sec. Litig.*, 209 F. Supp. 2d 1106, 1112 (D. Colo. 2002). In accordance with this dictate, the Court analyzes Mr. Profitt's Motion for Summary Judgment **(#68)** alone, without reference to Mr. Sayed's Motion for Summary Judgment **(#30)**.

V. Analysis

A. Official Capacity Claim

Mr. Sayed brings his claim against Mr. Profitt in both his official and individual capacities. Turning first to the official capacity claim, the Court notes that a suit by a citizen against a state official in his official capacity is, in effect, a suit against the state itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, the Court understands Mr. Sayed to assert a claim against the CDOC for violation of his First Amendment rights.

In the subject motion, Mr. Profitt argues that, to the extent that Mr. Sayed seeks monetary damages, his claim against the CDOC is barred by the Eleventh Amendment.[7] Mr. Sayed acknowledges that the Eleventh Amendment bars a claim for a damage award against the CDOC; he clarifies that his claim against the CDOC only requests injunctive relief.

As to any request for injunctive relief, Mr. Profitt[8] contends that there is no longer any controversy[9] because Mr. Sayed is no longer housed at LCF and he now has the opportunity to

---

[7] The Eleventh Amendment provides immunity to states (or arms or agencies of the state such as the Department of Corrections) for suits for monetary relief. *See Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990); *Mt. Healthy City School Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 280 (1977). Congress did not abrogate a state's Eleventh Amendment immunity for suits brought pursuant to § 1983; indeed, states, arms of the state, or employees of the state acting in their official capacity are not "persons" under section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Quern v. Jordan*, 440 U.S. 332, 345 (1979). The State of Colorado has not waived its immunity for civil rights suits. *See Griess v. Colorado*, 841 F.2d 1042, 1044–45 (10th Cir.1988). Accordingly, the Eleventh Amendment bars any claims for damages that Mr. Sayed asserts against to the CDOC.

[8] Although, as discussed *supra*, the claim is against the CDOC, for continuity purposes, the Court continues to use "Mr. Profitt" to indicate the defense's position.

[9] The exercise of subject matter jurisdiction requires a live case or controversy. *See* U.S. Const. Art. III, § 2; *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996). An

perform ablution according to his preferences. Mr. Sayed does not dispute that he is no longer at LCF, but he disputes that he can perform ablution at FCF.

Mr. Profitt submits an affidavit by Captain Lance Johnson, in his capacity as the Cell House Captain for Unit 3 at FCF, in which he describes the conditions for inmates FCF **(#68-7)**. At FCF, inmates are free to leave their cells, which includes the right to shower, during the following times: 10:15 a.m. to 11:00 a.m.; 3:30 p.m. to 4:30 p.m.; and 5:15 p.m. to 9:30 p.m. If an inmate has a job, he is free to shower at any time during the day, except during inmate count times. The affidavit also states that Mr. Sayed has not filed any grievance while at FCF based on a denial of the right to shower prior to Jum'ah services.

Mr. Sayed presents no evidence to rebut Captain Johnson's affidavit. Mr. Sayed merely states that he "does not submit that he is not still being deprived of the ability to perform complete ablution prior to Jumah services based upon Defendant's directions to C.D.O.C. in general." He gives no examples or specifics, nor does he specify what conduct should be enjoined or mandated at FCF. Mr. Sayed also states that he "is still suffering mental and emotional distress as a result of his time at L.C.F." This, however, is not material to a request for injunctive relief regarding conduct at FCF. Therefore, the Court finds that there is no genuine dispute as to material fact on the claim for injunctive relief and that it lacks any ability

---

actual case or controversy must exist at all stages of a federal court's review, not merely at the time the complaint is filed. *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). When it becomes impossible for a court to grant effective relief, a live case or controversy ceases to exist. *See Kan Judicial Review v. Stout*, 562 F.3d 1240, 1246 (10th Cir. 2009). A prisoner's transfer from one prison to another moots claims for injunctive relief against officials at the prior prison. *See Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010); *Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997).

to grant injunctive relief because Mr. Sayed has identified no practices at FCF that are constitutionally deficient.

   B.   **Individual Capacity Claim**

With respect to the claim against Mr. Profitt in his individual capacity, Mr. Profitt asserts the defense of qualified immunity. The doctrine of qualified immunity protects government officials who perform discretionary government functions from liability for civil damages and the obligation to defend the action. *See Johnson v. Fankell*, 520 U.S. 911, 914 (1997); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This immunity is only applicable, however, if the official's conduct did not violate clearly established constitutional or statutory rights that would have been known by a reasonable government official. *See Harlow*, 457 U.S. at 818; *McFall v. Bednar*, 407 F.3d 1081, 1087 (10th Cir. 2005).

When a defendant raises a qualified immunity defense, the burden shifts to a plaintiff to satisfy a two-part test. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Green v. Post*, 574 F.3d 1294, 1300 (10th Cir. 2009). A plaintiff must show that he or she had a constitutional right that was infringed (the "violation prong"), and that such right was clearly established at the time of the alleged infringement (the "clearly established prong"). Although a plaintiff must ultimately establish both elements to avoid application of the doctrine, the Court has discretion to consider the elements in any order. *See Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009); *Green*, 574 F.3d at 1299.

Here, the Court begins with the violation prong. With respect to this prong, a plaintiff must show that the defendant's actions deprived him or her of a constitutional or statutory right. *See Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995). Identification of a constitutional

right in the abstract is insufficient; instead, a plaintiff must precisely articulate the clearly established right that was allegedly violated and specifically identify the defendant's conduct that violated the right. *See Green*, 574 F.3d at 1300.

Mr. Sayed's claim is based on his right to free exercise of religion. It is well-settled that "[i]mates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (internal citations omitted); *see Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). A prisoner's First Amendment rights, however, are constrained by the realities of incarceration. *See id.* Prison regulations or practices that infringe upon prisoners' constitutional rights are valid as long as they are reasonably related to legitimate penological interests. *See id.*; *Boles*, 486 F.3d at 1181. Accordingly, the violation prong on a qualified immunity analysis is subject to a two-step inquiry. First, the inmate must show that the challenged action substantially burdened his sincerely-held religious beliefs. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). To do so, the inmate must establish that (i) the beliefs at issue are religious and sincerely held and (ii) that the restriction imposes a substantial burden on them.

The Tenth Circuit has identified three manners in which religious exercise can be substantially burdened: (i) by requiring participation in an activity prohibited by a sincerely held religious belief; (ii) by preventing participation in conduct motivated by a sincerely held religious belief; or (iii) by placing substantial pressure on a prisoner either to not engage in religious conduct or to engage in conduct contrary to his religion. *See Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1316 (10th Cir. 2010). As to the third type of restriction, more than mere inconvenience to the practice of one's religion is required. *See id.* If the prisoner meets this

10

initial burden, the burden shifts to the defendant to identify the legitimate penological interests that justify the impinging conduct. *See Kay*, 500 F.3d at 1218

In this case, Mr. Sayed is of the Islamic faith. Engaging in ablution prior to prayer is a requirement of his faith. There is no challenge that his Mr. Sayed's religious beliefs are sincerely held. The question before the Court is whether there is evidence to establish that Mr. Sayed's practice of ablution prior to prayer was prevented by Mr. Profitt's denial of his request to shower prior to Jum'ah services.

Mr. Sayed's claim is premised upon the contention that full ablution is required prior to Jum'ah services. Specifically, he argues that partial ablution was not sufficient if he slept deeply or experienced a "wet dream" during sleep and that the sink in his cell was not sufficient for him to perform partial ablution.

Mr. Profitt contends that substitute ablution was sufficient. He submits pages from the book "Islam in Focus" by Hammudah Abdalati **(#68-1)** (the late professor of sociology and, in particular, Islamic culture) setting forth the requirements of ablution.[10] The selected section states that one may use substitute for ablution, including full ablution, under a variety of circumstances including when the individual "has no access to water in sufficient quantity."[11]

---

[10] It is undisputed that Dr. Abdalati graduated from al-Azhar University in Egypt, received his Masters degree in Islamic Studies from McGill University, and a Ph.D. in Sociology from Princeton University. He previously served in the Department of Islamic Culture at al-Azhar, as the director of the Canadian Islamic Center of Edmonton, Alberta, and as an Associate Professor of Sociology at Utica College of Syracuse University. Mr. Profitt also represents that the World Assembly of Muslim Youth indicated to him that Dr. Abdalati's work was highly respected in the Muslim community.

[11] The section provides:
<u>Complete Substitute for the Ablution (Tayammum)</u>
Tayammum or resort to pure earth may substitute for the ablution and even the bath.

Mr. Sayed presents no evidence refuting this opinion, and instead appears to rely on the same source in support of his response. **(#30)**.[12]

In the absence of a showing as to why substitute ablution is not an adequate alternative, the Court finds that Mr. Sayed's religious practices have not been impaired. Although LCF's rules and procedures (and Mr. Profitt's denial of his request for accommodation) prevented Mr. Sayed from engaging in ablution in the manner he preferred, *i.e.*, full ablution through showering, he was fully able to engage in a sufficient and adequate alternative that satisfied the requirements of his religious practice. Because Mr. Sayed has not established a constitutional violation, his claim against Mr. Profitt in his individual capacity is barred by the doctrine of qualified immunity.

---

> This is allowed in any of the following cases:
> 1. When a person is sick and cannot use water;
> 2. When he has no access to water in sufficient quantity;
> 3. When the use of water is likely to do him harm or cause any disease;
> 4. When the performance of ablution makes the person miss a funeral or "Eed prayer, which has no substitute.
>
> In any of these instances it is permissible to make 'Tayammum' which is performed as follows:
> 1. Strike both hands slightly on pure earth or sand or stone.
> 2. Shake the hands off and wipe the face with them once in the same way as done in the ablution.
> 3. Strike the hands again and wipe the right arm to the elbow with the left hand and the left arm with the right hand.
>
> The 'Tayammum' is a symbolic demonstration of the importance of ablution, which is so vital for both worship and health. When Islam introduced this repeatable ablution, it brought alone with the best hygienic formula which no other spiritual doctrine or medical prescription had indicated.

[12] Although the Court is not considering Mr. Sayed's Motion for Summary Judgment **(#30)** in this Order, it is noteworthy that he himself relies on Dr. Abdalati's description of ablution and the circumstances under which complete substitute ablution may be used.

**IT IS THEREFORE ORDERED** that

(1)  Mr. Profitt's Motion for Summary Judgment **(#68)** is **GRANTED**.

(2)  Summary Judgment is entered in favor of Defendant Darryl R. Profitt on all claims.

(3)  The remaining motions are **(#30, 61, 64, 76)** are **DENIED**, as moot.

(4)  The Clerk of Court shall close this case.

Dated this 27th day of September, 2010

                                           **BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
United States District Judge